UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **DAVID ROBERT CRAWFORD**<br><br>      **Plaintiff,**<br><br>v.<br><br>**CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security,**<br><br>      **Defendant.** | Case No. 14-3272 |

**REPORT AND RECOMMENDATION**

    Plaintiff David Robert Crawford seeks review under 42 U.S.C. § 405(g) of the Social Security Administration's denial of his applications for disability insurance benefits, supplemental security income, and child insurance benefits. The parties have filed cross motions for summary judgment. For the reasons explained below, the Court recommends that Plaintiff's Motion for Summary Judgment **(#13)** be **DENIED**, Defendant's Motion for Summary Judgment **(#17)** be **GRANTED**, and that the decision to deny benefits be affirmed.

**I.  Background**

    In March 2007, Plaintiff filed an application for disability insurance benefits, supplemental security income, and a small period of child insurance benefits, alleging disability since January 1983. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff sought appeal and the Administrative Law Judge (ALJ) issued an unfavorable opinion in February 2010 (R. 12-24.) Plaintiff filed a complaint in the U.S. District Court, Central District, at which point the parties stipulated to reverse and remand the case for a rehearing under sentence four of 42 U.S.C. § 405(g). The Court directed the ALJ to obtain further I.Q. testing and reevaluate the claim.

    On remand, the ALJ held a second video hearing on August 20, 2013, and Plaintiff, represented by counsel appeared in Peoria, IL. The ALJ heard testimony from Plaintiff and an impartial vocational expert. On November 8, 2013, the ALJ issued an unfavorable decision. (R. 395-429.) The ALJ found that Plaintiff has the severe impairments of borderline intellectual functioning, disorder of back post lumbar fusion, post amputation of three toes, anxiety,

depression, personality disorder, and history of substance abuse (20 CFR §§ 404.1520(c) and 416.920(c)). The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). Additionally, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform

> "light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except no more than frequent stooping and crouching. Because of all the claimant's mental impairments and symptom combined, the claimant may, during times of symptoms exacerbation have moderate limitations in (1) concentration, persistence, and/or pace when attempting complex or detailed tasks, such that the claimant is limited to jobs that do not require complex or detailed job processes, that involve little in the way of change in job process from day to day, jobs that can be learned in 30 days or fewer, and jobs with multi-step, self-evident tasks, easily resumed after momentary distraction, and (2) social functioning, such that the claimant is limited to jobs that do not require any work related interaction with the public and that do not require more than occasional work related interaction with co-workers."

(R. 407.)

The ALJ found that Plaintiff has no past relevant work for purposes of social security income, but concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Plaintiff filed a Request for Review, which the appeals council denied, making the ALJ's ruling the Commissioner's final decision.

**II.    Standard of Review**

In reviewing the ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Importantly, in order for the Court to

evaluate the ALJ's analysis, the ALJ must build a "logical bridge from the evidence to his conclusion." *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

### III. Discussion

#### a. Medical Evidence and Medical Opinions

Plaintiff first critiques the ALJ's treatment of the medical record and the opinions of the doctors who treated and evaluated Plaintiff. Plaintiff argues that the ALJ failed to properly apply SSR-06-03p to evaluate Plaintiff's symptoms. Initially, the Court notes that the ALJ's review of the medical evidence of record was very thorough and detailed. Despite the ALJ's extensive review, Plaintiff makes several arguments.

The record does not contain any opinions of treating physicians, and therefore no opinion was entitled to controlling weight under 20 CFR § 404-1527(c)(2). Instead, the ALJ was directed to consider the factors set forth in 20 CFR § 404-1527(c)(2) and must have "minimally articulate[d]" his reasons for the weight assigned to a medical opinion. *Elder v. Astrue*, 529 F. 3d 408, 415 (7th Cir. 2008.)

First, Plaintiff critiques the ALJ's treatment of several of the physicians who evaluated Plaintiff: Dr. Vincent, Dr. Miller, and Dr. Treiger. With respect to Dr. Vincent, Plaintiff notes that Dr. Vincent's report indicates "[Plaintiff's] testing limits reflected borderline to mild mental retardation. His full Scale I.Q. was 65." (R. 681.) Plaintiff also repeats notes from Dr. Vincent's reports including notations of slow and underproductive speech, limited ability to respond due to compromised intellectual functions, and that Plaintiff was moderately depressed. (R. 681.) Plaintiff does not make any specific arguments with regard to the ALJ's treatment of Dr. Vincent's opinions. The ALJ found that Dr. Vincent's opinions "overstate the severity of the claimant's functional limitations." (R. 421.) The ALJ then detailed several reasons supporting this conclusion. For example, Dr. Vincent found that Plaintiff was moderately limited in his ability in understanding, remembering, and carrying out simple instructions, but Plaintiff had a recent history of performing at least semi-skilled work. (R. 421, 683.) Further, Dr. Vincent's conclusions relied on a finding that Plaintiff suffered from depression, but the medical record was absent of any significant depression symptoms or treatment. (R. 421.) Dr. Vincent was not a treating physician, and the ALJ minimally articulated his reasons for discounting Dr. Vincent's opinion.

3

Next, Plaintiff critiques the ALJ for not considering Dr. Treiger's GAF score of 47. The ALJ first considered the GAF score of 37 that Dr. Velez reported for Plaintiff. The ALJ dismissed this score, noting that "Dr. Velez is notorious for assigning inappropriately low GAF scores such that the Illinois DDS had to tell her to quit including GAF scores in her reports." (R. 401.) Plaintiff, however, fails to recognize that the ALJ also specifically addressed the GAF score assigned by Dr. Treiger. (R. 418.) The ALJ noted that Dr. Trieger assigned a GAF score of 47 and found that "the evidence fails to support the assigned GAF sore" as the score heavily relied on Plaintiff's subjective allegations and because GAF scores are of limited value because they are subjective and sensitive to timing. (R. 418-19.) Contrary to Plaintiff's Memorandum, the ALJ directly acknowledged Dr. Treiger's GAF score and gave good reason for discounting it.

Plaintiff also argues that the ALJ erred in considering Dr. Miller's opinion. Dr. Miller's report included a Full Scale IQ score of 50. The ALJ discounted this score for several reasons. First, Dr. Miller found that Plaintiff approached the test with "impulsive indifference," which the ALJ properly considered in weighing the accuracy of the test. (R. 362.) Further, Dr. Miller did not provide the full set of test scores for the ALJ to consider, but only provided the scores on certain subsets. (R. 253.) This is an appropriate consideration under 20 C.F.R. § 404.1527(c)(3). The ALJ found that Dr. Miller relied heavily on Plaintiff's own statements, and as discussed below, Plaintiff was not found to be credible. The ALJ also noted that Dr. Miller was not provided with accurate medical records in forming his opinions. As with the other physicians, the ALJ provided a detailed analysis of Dr. Miller's opinions and provided good reason for discounting his findings.

The record does not reveal and credible evidence showing that Plaintiff's limitations were greater than those found by the ALJ. The ALJ properly considered the medical evidence of record and at least "minimally articulated" the reasons for his conclusions. The Court does not recommend a finding of reversible error.

### b. Credibility

Plaintiff next argues that the ALJ erred in evaluating Plaintiff's credibility, specifically Plaintiff's statements relating to his chronic pain and "other symptoms." "An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F. 3d 500, 504-05 (7th Cir. 2004.) The Court will affirm the ALJ's credibility finding so

long as he "gives specific reasons that are supported by the record." *Skarbek v. Barnhart,* 390 F. 3d 500, 505 (7th Cir. 2004.)

The ALJ in this case gave numerous specific reasons for his credibility finding. Primarily, Plaintiff gave numerous inconsistent statements to medical professionals and during his testimony. For example, Plaintiff reported that his jobs ended because he could not maintain his concentration, but he has also repeatedly maintained that he lost the jobs due to absence and anxiety. Further, his reports to doctors suggested that he was attempting to portray himself as more cognitively limited than he really was for purposes of obtaining disability. For example, he approached an IQ test with "impulsive indifference" suggesting he was not making a full effort. Plaintiff made false statements about his drug and alcohol use. Additionally, Plaintiff was not seeking any mental health treatment at the time the ALJ issued his decision, which suggests a lack of desire to improve his condition. The ALJ gave multiple reasons, supported by the record, in support of his credibility determination and reasonably found that Plaintiff was not credible. For this reason, the Court does not recommend reversal.

## IV. Conclusion

For these reasons, the Court recommends that Plaintiff's Motion for Summary Judgment **(#13)** be **DENIED**, Defendant's Motion for Summary Judgment **(#17)** be **GRANTED**, and that the decision to deny benefits be affirmed. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 29th day of February, 2016.

                                                          s/DAVID G. BERNTHAL
                                            UNITED STATES MAGISTRATE JUDGE